# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CATHOLIC HEALTH INITIATIVES - IOWA,   )
CORP., d/b/a MERCY MEDICAL CENTER -    )
DES MOINES,                            )
1111 6th Avenue                        )
Des Moines, Iowa 50314,                )
                                       )
            Plaintiff,                 )    Case No.: _____
                                       )
      v.                               )
                                       )
KATHLEEN SEBELIUS, Secretary           )
United States Department of            )
Health and Human Services,             )
200 Independence Avenue, S.W.          )
Washington, DC 20201,                  )
                                       )
            Defendant.                 )
_____)

## COMPLAINT FOR SUMS DUE AND FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

## I.    INTRODUCTION

1.    This is an action for judicial review of a final decision of the Secretary of the Department of Health and Human Services ("Secretary") denying Medicare disproportionate share hospital ("DSH") payments to the plaintiff Hospital for services furnished to low-income patients.

2.    The Medicare DSH payment is for hospitals, like the plaintiff Hospital, that shoulder the financial burden of providing care for low-income patients. It is based on a proxy-measure for a hospital's low-income patient utilization, which is the sum of two fractions expressed as percentages. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. § 412.106(b)(2003).

3.      One of the two fractions used to calculate the DSH payment is commonly called the "Medicaid fraction." This fraction represents the percentage of a hospital's *total* patient days attributable to patients who were:  i) "eligible for medical assistance" under a State Medicaid plan;  and (ii) "*not* entitled to benefits under part A" of the Medicare statute. 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).   The larger the percentage derived from this fraction, the greater the DSH payment owed to the hospital.

4.      The second fraction used to calculate the DSH payment is sometimes called the "Medicare/SSI fraction" or the "SSI fraction" for short. The denominator of this fraction mirrors the numerator of the Medicaid fraction in that it consists of a hospital's patient days for patients who *were* "entitled to benefits under part A" of the Medicare statute.     *Id.* § 1395ww(d)(5)(F)(vi)(I). The numerator of the Medicare/SSI fraction includes the portion of those days attributable to beneficiaries who were also entitled to benefits under the federal supplemental security income ("SSI") program.

5.      The exclusion of low-income patient days from the numerator of the Medicaid fraction on the ground that the patients are "entitled to benefits under part A" of Medicare will necessarily reduce the Medicaid fraction, which reduces the DSH payment, because all patient days are included in the denominator of that fraction.  The addition of the same days to the Medicare/SSI fraction, however, will not necessarily increase that fraction or the DSH payment at all, and may even reduce the DSH payment, unless that particular low-income patient population in question is significantly more likely than other Medicare part A patients to have been entitled to federal SSI benefits.

6.      This case concerns the proper treatment in the calculation of the Medicare DSH payment of inpatient hospital days for two patients who were eligible for medical assistance

under a State plan, who were enrolled in the Medicare program, and who had very long stays in the plaintiff Hospital. It is undisputed that both patients were eligible for Medicaid for all of the days at issue. The precise question at issue is whether these patients were "entitled to benefits under part A" of Medicare for those days.

7.     The inpatient hospital service benefit under part A of the Medicare program is limited. It includes 90 days of inpatient hospital care per spell of illness and 60 "lifetime reserve" days that a beneficiary may elect to use to cover inpatient hospital care in excess of 90 days in a spell of illness. 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).

8.     The patient days at issue in this case were not covered or paid under Medicare part A nor was utilization of the part A inpatient hospital service benefit charged to the beneficiary. Nevertheless, the defendant Secretary determined that these patient days occurring after exhaustion of part A benefits should be excluded from the numerator of the Medicaid fraction on the ground that the patients were "entitled to benefits under part A." In this respect, the Secretary concluded that even after a Medicare inpatient has exhausted benefits under part A, he should still be counted for the period at issue as if he were "entitled to benefits under part A" for purposes of calculating the numerator of the Medicaid fraction.

9.     The Secretary does not count the same days consistently, however, for purposes of the other component of the DSH calculation, the Medicare/SSI fraction. The Secretary does not dispute that the same patients' inpatient hospital days at issue here were not counted in the Medicare/SSI fraction as days for patients who were "entitled to benefits under part A."

10.     The Secretary's decision is wrong, and must be reversed, because the term "entitled to benefits under part A" must be construed consistently in each instance where it is used within one single sentence of the Medicare DSH statute to describe the Medicaid and SSI

3

fractions. *See, e.g.,  Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 180 (D.C. Cir. 2008).  The Secretary's determination also violates the Medicare statute's definition of the entitlement to benefits under part A as the right to have payment made on one's behalf under, and subject to the limitations in, part A.  *See* 42 U.S.C. §§ 426(c)(1), 1395d(a).  Indeed, the Secretary has long interpreted the exact same term "entitled to benefits under part A", as it is used in the next subparagraph of the same statute, 42 U.S.C. § 1395ww(d)(5)(G), to mean that a patient is not entitled to benefits under part A for inpatient hospital days that occur after the patient has exhausted part A benefits for inpatient hospital services and for which no Medicare part A payment is made.  *See, e.g.,* 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990).  The Secretary has neither acknowledged nor explained that inconsistency and the agency is bound by that prior interpretation here.

11.    The Secretary's decision in this case is also inconsistent with the Medicare DSH regulation, 42 C.F.R. § 412.106, that was in effect during the period at issue.  As the Secretary elsewhere acknowledged in rulemaking proceedings to amend the DSH regulation with respect to the treatment of exhausted benefit days like the days at issue here for later periods, the Secretary's agency did not construe the regulation in effect during the earlier period at issue here to include exhausted benefit days in the SSI fraction as days for patients entitled to benefits under part A. *See* 69 Fed. Reg. 48916, 49098 (Aug. 11, 2004).

12.    Indeed, the Administrator's decision excluding the days at issue from the numerator of the Medicaid fraction does not reflect the Secretary's actual policy with respect to the treatment of these days in the DSH calculation during the periods at issue in this case. *See id.*; *see also Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996).  Nevertheless, the Administrator

has continued to issue decisions excluding exhausted days from the numerator of the Medicaid fraction for periods prior to the effective date of a 2004 amendment to the Secretary's regulation, *supra* ¶ 11, although he has settled at least two of those cases once they were appealed to district court. *See* Docket Entry #24, *Alhambra Hosp. Med. LP v. Leavitt*, Case No. 05-08421 (filed Nov. 30, 2005, C.D. Cal.) ("matter has settled pending final approval"); Stipulation of Settlement and Order of Dismissal, *Columbia Saint Mary's Hosp. Milwaukee, Inc. v. Leavitt*, Case No. 08-00479 (filed Mar. 20, 2008, D.D.C.).

13.    For these reasons, the Secretary's decision should be set aside and the Court should direct the Secretary to pay the plaintiff Hospital the additional Medicare DSH payments due it.

## II.    JURISDICTION AND VENUE

14.    This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the APA, 5 U.S.C. § 551 *et seq.*

15.    Jurisdiction is proper under 42 U.S.C. § 1395oo(f).

16.    Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

## III.    PARTIES

17.    The plaintiff is Catholic Health Initiatives - Iowa, Corp., a not-for-profit corporation that owns and operates Mercy Medical Center - Des Moines. The Hospital participates in the Medicare program as a "provider of services." The time periods at issue are the Hospital's cost reporting periods ending June 30, 1996 and June 30, 1997.

18.    The defendant is Kathleen Sebelius in her official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that

administers the Medicare program. References to the Secretary herein are meant to refer to her, her subordinates, and to her official predecessors or successors as the context requires.

19.     The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program. At some times relevant to this case, CMS was known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

## IV.     MEDICARE DSH PAYMENT

20.     Throughout the period at issue, the Medicare Act consisted of four parts: A through D. Part A covers "inpatient hospital services" furnished by participating providers of services, like the plaintiff Hospital. 42 U.S.C. § 1395d(a)(1).

21.     The part A benefit provides for payment to be made, on the beneficiary's behalf, for 90 days per spell of illness, with a lifetime reserve of up to 60 additional days. 42 U.S.C. § 1395d(a)(1). *See* 42 C.F.R. § 409.61(a).

22.     Medicare pays most hospitals under a prospective payment system ("PPS"). 42 U.S.C. § 1395ww(d); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined, standardized amounts per discharge, subject to certain payment adjustments. *Id.*

23.     One of the PPS payment adjustments is the DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106. Under the statutory provisions in effect during the periods at issue here, a hospital that serves a disproportionate share of low-income patients – a DSH – is entitled to an upward percentage adjustment to the standard PPS rates. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106.

24.     A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R.

§ 412.106(c)(1). As a proxy for utilization by low-income patients, the disproportionate patient percentage determines both a hospital's qualification for the DSH payment and the amount of the DSH adjustment for a qualifying hospital. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

25.    The first fraction is commonly known as the "Medicare/SSI fraction." The statute defines the Medicare/SSI fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplemental security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of this subchapter…

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).

26.    The other fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction." The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX [the Medicaid program], but who were *not entitled to benefits under part A of this subchapter*, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added).

27.    Under the statute, if Medicaid eligible patients were not "entitled" to Medicare part A benefits for the days at issue, then the days should be included in the numerator of the Medicaid fraction of the DSH calculation. Conversely, if the patients are "entitled" to Medicare part A benefits for the days at issue, then the days should *not* be included in the numerator of the Medicaid fraction.

28.    The Social Security Act provides that the entitlement to benefits under Medicare part A consists of the right to have payment made on an individual's behalf under, and subject to the limitations in, part A for inpatient hospital services furnished to the individual. *See* 42 U.S.C. § 1395d(a); 42 U.S.C. § 426(c)(1). *See Jewish Hosp. Inc., v. Sec'y of Health and Human Servs.*, 19 F.3d 270, 75 (6th Cir. 1994); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996). As articulated by the Secretary in the preamble to a 1990 Federal Register notice, *"[e]ntitlement to payment under part A ceases* after the beneficiary has used 90 days in a benefit period and has either exhausted the lifetime reserve days or elected not to use available lifetime reserve days." 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990) (emphasis added).

29.    The Secretary has conceded in briefs filed before this court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C. 2008), that for the period at issue here she did not include days for which a patient had exhausted his or her Medicare part A benefits in the SSI fraction as days for which the patient was "entitled to benefits under part A." *See* Defendants' Memorandum of Points and Authorities in Support of Defendant Leavitt's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment at 21, 24; *see also* Plaintiff's Reply Memorandum in Support of Its Motion for Summary Judgment and Memorandum in Opposition to Defendant Leavitt's Motion for Summary Judgment at 35, *Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C. 2008) (No. 06-1263).

30.    When an inpatient hospital stay encompasses two or more hospital fiscal years, the Secretary counts *all* of the days in the numerator of the Medicaid fraction, if the patient is eligible for medical assistance and not entitled to benefits under part A, in the hospital fiscal year in which the patient is discharged from the hospital. *See, e.g. Castle Med. Ctr.*, CMS Adm'r

Dec., Medicare & Medicaid Guide (CCH) ¶ 81,085 (Sept. 12, 2003); *see also* 42 C.F.R. § 412.106(b)(2).

## V.    MEDICARE PAYMENT AND APPEALS PROCESSES

31.    The Secretary contracts with fiscal intermediaries (usually private insurance companies) to perform certain audit and payment functions for the Medicare program.

32.    After the close of each fiscal year, a hospital is required to file a cost report with the fiscal intermediary. 42 C.F.R. §§ 413.20, 413.24.

33.    The Medicare fiscal intermediary analyzes the cost report and issues a determination, called a Notice of Program Reimbursement or "NPR," that informs the hospital of the intermediary's final determination as to the amount of program reimbursement due the hospital from the fiscal intermediary for the period. *See* 42 C.F.R. § 405.1803. *See also In re Medicare Reimbursement Litig. (Baystate Health System v. Thompson)*, 309 F. Supp. 2d 89, 92 (D.D.C. 2004), *aff'd*, 414 F.3d 7 (D.C. Cir. 2005), *cert. denied*, 547 U.S. 1054 (2006).

34.    The fiscal intermediary's final year-end determination is then reconciled with the aggregate amount of interim payments made to the hospital for services furnished in that fiscal year.

35.    A hospital is entitled to appeal to the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative tribunal appointed by the Secretary, if it is dissatisfied with a fiscal intermediary's determination as to the amount of Medicare payment due the hospital for a cost reporting period. *See* 42 U.S.C. § 1395oo(a), (h); 42 C.F.R. § 405.1835.

36.    The final decision of the PRRB is subject to review by the Administrator of CMS pursuant to delegation of authority by the Secretary. *See* 42 U.S.C. § 1395oo(f); 42 C.F.R. § 405.1875. A hospital that is dissatisfied with the Secretary's final decision, as set forth either

in a final decision of the Board or of the Administrator of CMS, may appeal to this Court within 60 days of receipt of notice of the decision.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(a), (f).

## VI.    FACTS SPECIFIC TO THIS CASE

37.    The record evidence and stipulations of the parties in the proceedings below show that the patient days at issue in this case relate to two individuals who had long inpatient stays at the plaintiff Hospital, totaling 1,447 and 1,828 days, respectively.  The record evidence and stipulations also show that the patients were admitted to the Hospital during calendar year 1992 and that their inpatient hospital stays ended during the Hospital's cost reporting period ending June 30, 1997.

38.    The record evidence and stipulations of the parties in the proceedings below show that during the period of their hospital stays, the two patients at issue were eligible for medical assistance under a State plan approved under the Medicaid statute in Title XIX of the Social Security Act for 1,297 and 678 days (combined 1,975 days), respectively, and that Medicare part A did not make payment for any of the 1,975 days for which the two patients were eligible for medical assistance.

39.    The record evidence and stipulations of the parties in the proceedings below show that the 1,975 days at issue were not counted in the numerator of the Medicaid fraction for the Hospital's cost reporting period ending June 30, 1997, nor for any prior period.

40.    The record evidence and stipulations of the parties in the proceedings below show that the days at issue also were not counted by the Secretary in her determination of the Hospital's  Medicare/SSI fraction as days for which these patients were entitled to benefits under part A.

41.    The record evidence and stipulations of the parties in the proceedings below show that in August 2004, the Hospital and the Secretary's fiscal intermediary entered an agreement, under which the fiscal intermediary agreed to include some of the days at issue here in the Hospital's Medicaid fraction for the periods at issue.  The fiscal intermediary subsequently paid the Hospital for those days in November 2004.

42.    The record evidence and stipulations of the parties in the proceedings below show that in June 2005, the fiscal intermediary reopened the Hospital's 1996 and 1997 Medicare cost reports to take back the money previously paid to the Hospital under the terms of the agreement discussed in the preceding paragraph.  The stated purpose of this recoupment was to implement "a recent clarification" from the Secretary that "dual eligibility days should not be included in either the Medicare or Medicaid [fraction] for periods prior to October 1, 2004."

43.    The Hospital timely appealed the fiscal intermediary's revised determination to the PRRB.

44.    After a hearing, the Secretary's Board issued a decision dated December 4, 2009.

45.    In its December 4, 2009 decision, the Secretary's Board ruled that the days at issue "should be included in the Medicaid [fraction] that is used to calculate the DSH adjustment payment" for the Hospital's fiscal year ending June 30, 1997 because "the days at issue here were not attributable to patients who were entitled to have payment made on their behalf for those days."

46.    The Board's decision explained that its ruling was based on its conclusions that the fiscal intermediary's determination "violates the plain language of the Medicare statute," is inconsistent with the Secretary's concessions before this Court in the *Baystate* case, and is

11

inconsistent with the Secretary's interpretation of her regulation during the time periods at issue, which "considered Part A exhausted days to be not entitled to benefits under Medicare Part A."

47.     Upon review of the Board's decision, the Acting Deputy Administrator of CMS, in a decision signed on January 14, 2010, reversed the ruling of the Secretary's Board and determined that all of the days at issue should be excluded from the Medicaid fraction used to calculate the Hospital's DSH payment.

48.     The Acting Deputy Administrator wrote that the days at issue should be excluded from the numerator of the Medicaid fraction on the ground that "while a Medicare beneficiary's benefit period may exhaust or expire, the entitlement for Medicare does not expire."

49.     The Acting Deputy Administrator's decision also states that the days at issue should not be included in the Medicare/SSI fraction for periods prior to the 2004 amendment to the DSH regulation.

50.     The Acting Deputy Administrator's decision constitutes the Secretary's final decision in this matter.

51.     The Acting Deputy Administrator's decision was sent to the Hospital's counsel under cover of a letter dated January 22, 2010, and was received by the Hospital's counsel on January 25, 2010.

52.     By the filing of this Complaint, the Hospital has timely commenced this action for judicial review of the Deputy Administrator's decision in accordance with 42 U.S.C. § 1395oo(f).

## VII.   ASSIGNMENT OF ERRORS

53.    The Secretary's final decision below should be set aside because it is contrary to law, arbitrary and capricious, and not based upon substantial evidence in the record. *See* 42 U.S.C. § 1395oo(f); 5 U.S.C. § 706.

54.    The Secretary's determination to exclude the days at issue from the numerator of the Medicaid fraction is contrary to the plain meaning and intent of the DSH provisions of the Medicare statute, because the patients at issue were eligible for medical assistance under a State plan and were not entitled to have Medicare part A payment made on their behalf for the days in question. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

55.    The Secretary's determination to exclude the days at issue from the numerator of the Medicaid fraction is inconsistent with the regulation in effect during the periods at issue, which did not count Medicare part A exhausted benefit days in the SSI fraction as days for patients who were "entitled to benefits under part A." *See, e.g.*, *Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., Medicare & Medicaid Guide (CCH) ¶ 45,032 (Nov. 29, 1996). The Secretary is bound by the regulations in effect during the periods at issue. Moreover, having established its prior interpretation of the term "entitled to benefits under part A" in the Medicare DSH calculation, the agency was required to invoke the notice and comment rulemaking procedure mandated by the Administrative Procedure Act to change that interpretation and such changes could only have prospective effect. *See Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 814 (D.C. Cir. 2001). It was not until October 1, 2004, long after the years at issue here, that the Secretary engaged in notice and comment rulemaking and "adopt[ed] a policy" to begin counting days for which a patient has exhausted his or her Medicare part A benefits as Medicare part A days in the Medicare/SSI fraction. *See* 69 Fed. Reg. 48916, 49098-99 (Aug. 11, 2004).

56.    The Secretary's determination to exclude the days at issue from the numerator of the Medicaid fraction is inconsistent with the Secretary's longstanding approach, beginning with the publication of the initial DSH regulation in 1986 and subsequently advanced in the Secretary's briefs before several federal Courts of Appeals, that "entitled" to benefits under Medicare part A means entitlement to have payment made by Medicare part A. The Secretary is bound by her own contemporaneous statements of intent at the time she initially adopted the DSH regulation, particularly when that interpretation has been advanced in prior litigation before the federal courts. *See Nat'l Family Planning & Reproductive Health Ass'n v. Sullivan*, 979 F.2d 227, 241 (D.C. Cir. 1992).

57.    The Secretary has never counted the patient days occurring after a patient's exhaustion of part A benefits as Medicare patient days in the calculation of the payment for graduate medical education costs, which turns in part on the percentage of a hospital's total patient days attributable to patients with respect to whom payments may be made under Medicare part A. 42 U.S.C. § 1395ww(h)(3). The Secretary has never offered any rational explanation for the agency's inconsistent treatment of exhausted benefit days for purposes of the DSH payment and the graduate medical education payment. The only plausible explanation is that the Secretary's inconsistent treatment of these days has the effect of reducing both the DSH payment and the graduate medical education payments made to hospitals. The Secretary's inconsistent treatment of these days for purposes of the DSH payment, therefore, is arbitrary and capricious.

58.    All of the days at issue should be counted in the numerator of the Medicaid fraction for the Hospital's cost reporting period ending June 30, 1997, which is the fiscal year in which each of these two patients were discharged from the Hospital.

14

## VIII.  REQUEST FOR RELIEF

59.    WHEREFORE, the plaintiff Hospital requests an Order:

A.    declaring invalid and setting aside the Secretary's final decision excluding the patient days at issue from the numerator of the Medicaid fraction used to calculate the Hospital's Medicare DSH calculation for the cost reporting periods at issue;

B.    directing the Secretary to recalculate the Hospital's Medicare DSH payment for its fiscal year ending June 30, 1997 by including the days at issue in the numerator of the Medicaid fraction for that period and to promptly pay the Hospital the additional DSH payments due as a result of that correction, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C.    requiring the Secretary to pay legal fees and costs of suit incurred by the plaintiff; and

D.    providing such other relief as the Court may consider appropriate.


Respectfully submitted,

Christopher L. Keough
  DC Bar No. 436567
J. Harold Richards
  DC Bar No. 469524
KING & SPALDING L.L.P.
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006-4706
(202) 737-0500 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiff

Dated: March 12, 2010